1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12   FLORA KEILCH,

Case No. 15-CV-01526-LHK

13              Plaintiff,

**ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY JUDGMENT**

14        v.

15   SUENIA ROMERO,

Re: Dkt. Nos. 61, 63

16              Defendant.

17

18        Before the Court are Defendant Suenia Romero's motion for sanctions, ECF No. 63, and

19   motion for summary judgment, ECF No. 61.  Plaintiff did not file a substantive opposition to

20   either motion.  *See* ECF Nos. 71, 72.  Pursuant to Civil Local Rule 7-1(b), the Court finds this

21   matter appropriate for resolution without oral argument and VACATES the motion hearing set for

22   August 25, 2016, at 1:30 p.m.  Having considered the submissions of the parties, the relevant law,

23   and the record in this case, the Court GRANTS Defendant's motion for sanctions and motion for

24   summary judgment.

25
26
27

1

28   Case No. 15-CV-01526-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY
JUDGMENT

# I.   BACKGROUND

## A.  Factual Background

The instant case involves a single claim brought under 42 U.S.C. § 1983 for the allegedly unlawful removal of Plaintiff's son R.J. from Plaintiff's custody in April 2013.  Plaintiff alleges that Defendant intentionally made materially false statements and misrepresentations in support of Defendant's application for a protective custody warrant to remove R.J. from Plaintiff's custody.

The following facts regarding the circumstances of the protective custody warrant are undisputed.

### 1.  R.J.'s Emergency Room Visits and Hospitalizations

R.J. was born in September 2004.  R.J. began seeing a psychiatrist when R.J. was three and was first prescribed psychiatric medications when R.J. was five.  ECF No. 66-4 (Plaintiff's deposition).  In 2013, Plaintiff and R.J.'s father Rodney shared medical decision-making for R.J. pursuant to an October 2011 custody order.  ECF No. 67-1 (October 2011 custody order).[1]

Plaintiff took R.J. to the emergency room for mental health treatment eight times between February 11, 2013 and April 5, 2013.

On February 11, 2013, Plaintiff took R.J. to the Kaiser emergency room after R.J. said that he had ingested three pills from Plaintiff's purse.  ECF No. 66-4 (Plaintiff's deposition).  The treating psychiatrist discharged R.J. without placing R.J. in a psychiatric hold.  ECF No. 66-6 (Kaiser Permanente medical record).

On February 28, 2013, Plaintiff took R.J. to the Kaiser emergency room after R.J. became violent with R.J.'s teacher at school and with Plaintiff.  ECF No. 66-4 (Plaintiff's deposition); 66-6 (Kaiser Permanente medical record).  Dr. Lisa Hayes at Kaiser evaluated R.J. for a psychiatric hold and ultimately discharged R.J. without placing him in a psychiatric hold.  ECF No. 66-7 (Dr.

---

[1] Defendant requests that the Court take judicial notice of several orders from California state courts.  ECF No. 67.  Court orders from other courts are appropriate subjects of judicial notice under Federal Rule of Evidence 201.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of various court filings).  Accordingly, the Court GRANTS Defendant's request for judicial notice.

United States District Court
Northern District of California

1    Hayes' deposition).

2        On March 4, 2013, Plaintiff took R.J. to the Kaiser emergency room after R.J. exhibited

3    increased aggression at school and towards Plaintiff.  ECF No. 66-4 (Plaintiff's deposition); 66-6

4    (Kaiser Permanente medical record).  Dr. Rezowalli examined R.J. and recommended that R.J. go

5    to Rebekah's Children's Services ("Rebekah's"), a step down facility, as an alternative to an

6    inpatient hospitalization.  *Id.*  R.J.'s father would not agree to send R.J. to Rebekah's, so R.J. was

7    discharged to Plaintiff's home.  *Id.*

8        On March 11, 2013, Plaintiff took R.J. to the Santa Clara Valley Medical Center

9    emergency room after R.J. behaved unsafely and aggressively.  ECF No. 66-4 (Plaintiff's

10   deposition).  R.J. was admitted to Emergency Psychiatry Services and discharged that night.  *Id.*

11       Plaintiff returned R.J. to the Santa Clara Valley Medical Center emergency room shortly

12   after midnight on March 12, 2013 because R.J. was violent with Plaintiff and R.J.'s sister.  *Id.*

13   Emergency Psychiatry Services placed R.J. under a 72-hour psychiatric hold.  *Id.*

14       R.J. was transferred to St. Helena for an inpatient pediatric psychiatric hospitalization on

15   March 13, 2013.  *Id.*  During this hospitalization, psychiatrist Dr. Catherine Mason recommended

16   that R.J. take Seroquel, a psychiatric medication.  ECF No. 66-4 (Plaintiff's deposition); 66-9 (St.

17   Helena medical records).  Plaintiff consented to have R.J. take Seroquel, but R.J.'s father would

18   not consent, so R.J. could not be given Seroquel.  *Id.*  R.J. was discharged to Plaintiff's home on

19   March 19, 2013 with discharge diagnoses of "Mood disorder not otherwise specified" and

20   "Oppositional defiant disorder."  ECF No. 66-9 (St. Helena medical records).

21       Plaintiff returned R.J. to the Kaiser emergency room on March 21, 2013 after R.J. became

22   aggressive at school and threatened his teachers.  ECF No. 66-6 (Kaiser medical records).  Dr.

23   Rozowalli placed R.J. on a psychiatric hold.  *Id.*  R.J. was then admitted to the St. Helena

24   psychiatric facility.  ECF No. 66-10 (St. Helena medical records).  Dr. Mason again recommended

25   that R.J. take Seroquel and that R.J. be transferred to a step down facility rather than discharged to

26   Plaintiff's home.  *Id.*; ECF No. 66-4 (Plaintiff's deposition).  Plaintiff consented to both

27

28   Case No. 15-CV-01526-LHK
     ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1    recommendations, but R.J.'s father did not. *Id.* On March 30, 2013, R.J. was discharged to

2    Plaintiff's home with discharge diagnoses of oppositional defiant disorder, mood disorder, and

3    intermittent explosive disorder. ECF No. 66-10 (St. Helena medical records).

4        On March 31, 2013, Plaintiff took R.J. to the Kaiser emergency room after R.J. had

5    behavioral difficulties throughout the day, including at a bookstore. ECF No. 66-4 (Plaintiff's

6    deposition). Kaiser placed R.J. on another psychiatric hold. *Id.* St. Helena initially declined to

7    readmit R.J. because St. Helena felt it was "unable to meet the pt's/families needs at this time."

8    ECF No. 66-8 (Kaiser call log). St. Helena eventually accepted R.J. as a patient under Dr.

9    Mason's care, though St. Helena told Kaiser that Kaiser "may need to assist in promoting

10    treatment options with family and exploring resources." *Id.*; ECF No. 66-11 (St. Helena medical

11    records). Kaiser encouraged Dr. Mason to file a report to the Department of Family and

12    Children's Services ("DFCS") because R.J.'s parents were not authorizing treatment for R.J. ECF

13    No. 66-11.

14        On April 1, 2013, while R.J. was hospitalized at St. Helena, Dr. Mason had R.J. begin

15    taking Seroquel based on Plaintiff's consent and without R.J.'s father's consent. *Id.* On April 2,

16    2013, R.J.'s grandfather called St. Helena and told St. Helena that under state law, St. Helena was

17    not legally authorized to give R.J. medication without R.J.'s parents' consent, and that the

18    grandfather would pursue legal action against the hospital if the hospital did not follow state law.

19    *Id.* Later on April 2, 2013, St. Helena elected to discontinue the use of Seroquel "in light of

20    ongoing parental controversy." *Id.* After St. Helena informed Plaintiff that the Seroquel would be

21    discontinued, Plaintiff spoke to Dr. Mason on the phone. *Id.* In the phone call, Plaintiff was upset

22    that the Seroquel was being discontinued, and Plaintiff eventually hung up on Dr. Mason. *Id.* In

23    another phone call to St. Helena on April 2, 2013, Plaintiff requested contact information for the

24    hospital legal department. *Id.*

25        St. Helena recommended that R.J. be discharged to a step down facility such as Rebekah's,

26    but Plaintiff declined. *Id.* R.J. was discharged to Plaintiff's home on April 4, 2013 with the

27

28    Case No. 15-CV-01526-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY
JUDGMENT

*United States District Court*
*Northern District of California*

4

1 | discharge diagnoses of mood disorder not otherwise specified, oppositional defiant disorder, and

2 | intermittent explosive disorder.  *Id.*  Next to her signature on the discharge forms, Plaintiff wrote

3 | "diagnosis: PTSD."  *Id.*  Following R.J.'s discharge, Dr. Hunter of St. Helena had R.J. placed on a

4 | list of individuals not to be readmitted to St. Helena because Dr. Hunter did not feel that St.

5 | Helena could treat R.J. so long as R.J.'s parents disagreed about whether to provide treatment to

6 | R.J.  ECF No. 66-16 (Houston deposition).

7 |    The next day, on April 5, 2013, Plaintiff returned R.J. to the Kaiser emergency room

8 | because R.J. opened the door on a moving car and behaved violently towards Plaintiff and R.J.'s

9 | sister.  ECF No. 66-4 (Plaintiff's deposition).  R.J. was placed on a 72-hour psychiatric hold set to

10 | expire at 2 p.m. on April 8, 2013.  ECF No. 66-6 (Kaiser medical record); 66-13 (Dr. Berger's

11 | deposition).  Kaiser tried to transfer R.J. to St. Helena for the duration of R.J.'s hospitalization, but

12 | St. Helena refused to admit R.J. because R.J.'s parents disagreed on R.J.'s treatment and because

13 | both parents had threatened to sue St. Helena.  ECF No. 66-8 (Kaiser call log).  Kaiser attempted

14 | to transfer R.J. to the John Muir hospital, but John Muir declined R.J. based on R.J.'s parents'

15 | behavior and because John Muir had another referral they wanted to take.  *Id.*  Kaiser contacted

16 | the Sutter Center for Psychiatry, but Sutter had no beds available for R.J.  *Id.*

17 |    Kaiser medical staff concluded that R.J. was a "danger to himself and others."  ECF No.

18 | 62-2 (Kaiser report to DFCS).  Kaiser medical staff furthermore had "concerns for the child's

19 | safety and suspect the child is being medically neglected by the parents" because "the parents are

20 | not capable of providing the child's medical needs."  *Id.*  Accordingly, Kaiser filed a report of

21 | medical negligence to DFCS.  *Id.*

22 |    **2.  DFCS Investigation**

23 |    DFCS is responsible for responding to reports of child abuse and neglect in the County of

24 | Santa Clara.  ECF No. 62 ("Romero Decl.") ¶ 3.  Defendant responded to Kaiser's report

25 | regarding R.J. on April 6, 2013 and investigated the report over the next two days.  *Id.*  As part of

26 | her investigation, Defendant spoke with Plaintiff, R.J., R.J.'s sister, and R.J.'s father.  *Id.* ¶ 6.

27 |

28 |

Case No. 15-CV-01526-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

1  When Defendant spoke with Plaintiff, Plaintiff told Defendant that Plaintiff's "current diagnosis

2  was and is PTSD."  ECF No. 66-2 (Defendant's deposition); 66-4 (Plaintiff's deposition).

3  Defendant also spoke with R.J.'s medical providers and obtained information from them about

4  R.J.'s diagnoses and the family's history of disagreeing over R.J.'s treatment and threatening to

5  sue St. Helena.  *Id.* ¶ 8.

6      Defendant learned that St. Helena would admit R.J. if R.J. was in protective custody, and

7  Defendant hoped St. Helena would be willing to admit R.J. if St. Helena knew DFCS was

8  monitoring R.J.'s situation without taking R.J. into protective custody.  ECF No. 66-2

9  (Defendant's deposition); 66-8 (Kaiser call log).  On April 6, 2013, Defendant wrote a letter to St.

10  Helena explaining that Plaintiff supported providing treatment to R.J. and encouraging St. Helena

11  to admit R.J. with a social worker assigned to monitor R.J.  ECF No. 66-6 (Kaiser medical record).

12  St. Helena responded that they would accept R.J. only if R.J. was in protective custody by DFCS.

13  *Id.*

14      Defendant additionally told Plaintiff that Plaintiff should file for an emergency screening

15  in family court to gain temporary full legal custody of R.J.  Romero Decl. ¶ 6.  Plaintiff completed

16  the forms to apply for temporary full legal custody and told Defendant that Plaintiff's aunt would

17  submit the paperwork on Monday, April 8, 2013.  *Id.*; ECF No. 66-4 (Plaintiff's deposition).

18  Plaintiff's aunt took papers to the Contra Costa County court on the afternoon of Monday, April 8,

19  2013, but arrived after the court closed for the day, so she did not file any of the paperwork.  ECF

20  No. 66-18 (Kathleen Keilch deposition).  When R.J.'s psychiatric hold expired at 2 p.m. on April

21  8, 2013, no paperwork had been filed.  Plaintiff did not file any paperwork with the court to

22  modify the custody arrangements for R.J. until April 25, 2013.  *Id.*

23      Early in the morning of April 8, 2013—the day R.J.'s psychiatric hold was set to expire—

24  Defendant requested an emergency review of Defendant's finding in order to decide whether to

25  seek a warrant for protective custody.  ECF No. 66-2 (Defendant's deposition).  During the

26  emergency review, DFCS spoke with representatives of Kaiser and St. Helena.  *Id.*  In the phone

27

28
Case No. 15-CV-01526-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY
JUDGMENT

call with St. Helena, St. Helena reiterated to DFCS that St. Helena would admit R.J. only if R.J. were in DFCS's protective custody.  *Id.*  DFCS also requested and obtained a letter confirming Kaiser's position in writing.  The letter stated that three of Kaiser's contract facilities refused to admit R.J. because of R.J.'s parents' unwillingness to consent to psychotropic medication for R.J., and that Kaiser believes "it is urgent that you pursue whatever course is available to see that this child is admitted to an Acute Child Pyschiatric Unit and that the medical professionals there are allowed to proceed with immediate, effective psychiatric assessment and treatment."  ECF No. 66-6 (Kaiser medical record).

At the conclusion of the DFCS meeting, DFCS determined that protective custody was warranted.  ECF No. 66-2 (Defendant's deposition).  Romero prepared the warrant and Judge Schwartz signed the petition and warrant authorizing R.J.'s removal from his parents' custody on April 8, 2013.  Romero Decl. ¶ 4, Ex. V.  R.J. subsequently received treatment at St. Helena and Rebekah's before being returned to his parents' custody in August 2013.

## B.  Procedural History

Plaintiff filed the instant lawsuit against Defendant and Marshell Terry-Battle pursuant to 42 U.S.C. § 1983 on April 2, 2015.  ECF No. 1.  Plaintiff alleges that Defendant violated her Fourth and Fourteenth Amendment rights by removing R.J. from her custody through the use of a warrant obtained through the use of a declaration containing materially false statements and misrepresentations.  *Id.*  Defendant and Terry-Battle answered on May 13, 2015.  ECF No. 13. The Court granted the stipulation of dismissal with prejudice of Terry-Battle on July 6, 2016. ECF No. 59.

On June 24, 2016, Defendant requested that Magistrate Judge Lloyd order the deposition testimony of Dr. Mason and Dr. Hunter.  ECF No. 52.  On June 29, 2016, Magistrate Judge Lloyd granted Defendant's request and ordered that the "depositions of Drs. Mason and Hunter shall proceed forthwith."  ECF No. 54.[2]

---

[2] Plaintiff's objection to Dr. Mason's deposition was that it exceeded the 10-deposition limit.

Case No. 15-CV-01526-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    On July 15, 2016, at the deposition of Dr. Mason, Plaintiff's counsel objected on the record

2 to the deposition proceeding without Plaintiff's express consent.  ECF No. 60 (civil minute order).

3 The parties called Magistrate Judge Lloyd on the record "to resolve whether Dr. Mason may

4 decline to testify due to the lack of a signed consent form from her patient and in light of

5 Plaintiff's counsel's objection on the record to proceeding without that express consent." *Id.*

6 Magistrate Judge Lloyd stated that "it isn't required for the client to sign the consent form in view

7 of the order that [Magistrate Judge Lloyd] issued" and that he "hope[d] the deposition would go

8 forward based upon my order." ECF No. 64-1 (Mason deposition).  Magistrate Judge Lloyd

9 further "stated that, if the deposition does not go forward because of Plaintiff's objection, it might

10 be appropriate to award an adverse-inference jury instruction." ECF No. 60.  Following the call

11 with Magistrate Judge Lloyd, Plaintiff's counsel renewed the objection to Dr. Mason's testimony,

12 and Dr. Mason's deposition did not go forward.  ECF No. 64-1.

13    On July 21, 2016, Defendant filed the instant motions for summary judgment, ECF No. 61,

14 and for sanctions, ECF No. 63.  On August 1, 2016, Plaintiff filed an administrative motion

15 seeking to stay briefing on Defendant's two motions and for permission to file a motion to dismiss

16 Defendant's two motions.  ECF No. 69.  The Court denied Plaintiff's administrative motion on

17 August 5, 2016.  ECF No. 73.  On August 3, 2016, Plaintiff filed a response to Defendant's

18 motion for summary judgment, ECF No. 71, and a response to Defendant's motion for sanctions,

19 ECF No. 72.  Neither response contained any substantive opposition to Defendant's motions.

20 Plaintiff instead took the position in both responses that "requiring a response/opposition to two

21 simultaneously filed motions totaling 814[3] pages in length, both with a 14 day response/opposition

22 limit" would be an "undeniable burden" and "an unreasonable, prejudicial, and unachievable

23 burden." ECF Nos. 71, 72.  Defendant did not file replies.

24 ───────────────────────────────────

25 After Defendant argued that Defendant had only taken 8 depositions, Plaintiff instead argued that
   Dr. Mason's deposition would violate R.J.'s privacy.  However, because all of R.J.'s medical
26 records—including those from Dr. Mason—had already been produced to Defendant, Magistrate
   Judge Lloyd ordered the deposition to proceed.  ECF No. 54.
27 [3] Each of Defendant's motions is within the 25-page limit for motions.

8

28 Case No. 15-CV-01526-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

## II.   LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative," the court may grant summary judgment.  *Id.* at 249-50 (citation omitted).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).

When, as here, there are no disputes of material fact, the Court "shall grant summary judgment if . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### B.  Sanctions

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence: [1] the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and [2] the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'"  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting Fed. R. Civ. P. 37(b)(2)).

Rule 37(b)(2)(A) provides that, if a party fails to obey an order to provide or permit discovery, the Court may impose sanctions including "dismissing the action or proceeding in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(v).  Additionally, the Court may dismiss a party's claims pursuant to the Court's inherent authority "when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings."  *Leon*, 464 F.3d at 958 (citing *Anheuser-Busch, Inc. v. Natural Beverages Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).

9

United States District Court
Northern District of California

Because dismissal is a harsh sanction, the Court must weigh five factors to determine whether dismissal is an appropriate sanction:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Anheuser-Busch*, 69 F.3d at 348 (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)).  Dismissal is appropriate only upon a finding of "willfulness, fault, or bad faith." *Leon*, 464 F.3d at 958.  Additionally, "[d]ue process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case." *Anheuser-Busch*, 69 F.3d at 348 (internal quotation marks and brackets omitted).

Furthermore, Rule 37(b)(2)(C) provides that, if a party fails to comply with a discovery order, the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

## III.    DISCUSSION

### A.  Summary Judgment

The sole claim in Plaintiff's complaint is based on the allegation that Defendant's application for a protective custody warrant contained material misrepresentations, lies, and omissions.

At the summary judgment stage in cases brought under 42 U.S.C. § 1983 based on allegedly inaccurate information in an affidavit filed in support of a warrant application, the "plaintiff must make (1) a substantial showing of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred." *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (citing *Liston v. Cty. of Riverside*, 120 F.3d 965, 972-975 (9th Cir. 1997)) (internal quotation marks omitted).

10

Case No. 15-CV-01526-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY JUDGMENT

In discovery, Plaintiff identified the following as the alleged misrepresentations, lies, and omissions:

- The warrant application falsely states that Plaintiff stated that R.J. had only PTSD.

- The warrant application falsely states that Plaintiff threatened to sue the hospital.

- The warrant application falsely states that neither parent had taken steps to go to family court to seek an order to address R.J.'s mental health needs.

- The warrant application falsely states that R.J. was at significant risk of serious physical harm or emotional damage in Plaintiff's care.

- The warrant application states that Plaintiff believes R.J. required further psychiatric hospitalization and medication without stating that Kaiser and other medical professionals also recommended further psychiatric hospitalization and medication for R.J.

- The warrant application omits that Defendant wrote a letter in Plaintiff's favor on April 6, 2013, or any mention of the favorable information about Plaintiff contained in that letter.

- The warrant application omits that Plaintiff took steps to go to family court to seek an order to address R.J.'s mental health needs.

- The warrant application omits that Plaintiff agreed to the recommendations of the hospital staff and was willing to comply with medication and therapy recommendations.

- The warrant application omits many of the efforts Plaintiff took to ensure R.J. received proper medical care.

- The warrant application omits any mention of Plaintiff's efforts to ensure R.J. received an education.

- The warrant application omits any mention that Plaintiff followed the advice of all medical and mental health professionals.

11

Case No. 15-CV-01526-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY JUDGMENT

1    ECF No. 66-1 (Plaintiff's interrogatory responses).

2          As to the four alleged falsehoods in the warrant application, the undisputed facts show that

3    these four statements were not false.  When Defendant spoke with Plaintiff, Plaintiff told

4    Defendant that R.J.'s diagnosis was PTSD with no mention of any other diagnoses.  Kaiser's call

5    logs documents that Plaintiff threatened to sue the hospital.  On April 8, 2013, when the warrant

6    application was filed, no paperwork had been filed with the family court to seek an order to

7    address R.J.'s health needs.  Finally, the record shows that under the custody arrangement in April

8    2013, Plaintiff was unable to authorize the treatments required to ensure R.J.'s mental health, thus

9    placing R.J. at serious risk of physical harm or emotional damage.

10         Furthermore, based on the undisputed facts, none of the alleged lies, misrepresentations, or

11   omissions were material.  The undisputed facts show that Plaintiff took R.J. to the emergency

12   room 8 times between February 11, 2013 and April 5, 2013, several of which resulted in hospital

13   admittances.  During each hospitalization, hospital staff recommended that R.J. be prescribed

14   psychotropic medication, Plaintiff consented, and R.J.'s father refused to consent, thus preventing

15   R.J. from obtaining the recommended treatment.  During R.J.'s final psychiatric hold, all three of

16   Kaiser's contract hospitals would not admit R.J. as a patient because the disagreement between

17   R.J.'s parents meant that the hospitals could not treat R.J.  Thus, Kaiser was unable to find any

18   hospital placement for R.J. during R.J.'s last psychiatric hold.  These undisputed facts, all of

19   which were included in Defendant's warrant application, do not depend on any of the alleged lies,

20   misrepresentations, or omissions identified by Plaintiff.

21         On these undisputed facts, there was probable cause based on the totality of the

22   circumstances for Judge Schwarz to issue the protective custody warrant in order to ensure the

23   provision of appropriate medical care to R.J.  *See Illinois v. Gates*, 462 U.S. 213, 238 (1983)

24   (warrants are to be issued upon a showing of probable cause based on analysis of the totality of the

25   circumstances).  Thus, as a matter of law, Plaintiff cannot show that "but for the dishonesty, the

26   challenged action would not have occurred."  *Butler*, 281 F.3d at 1024.

27                                              12

28   Case No. 15-CV-01526-LHK
     ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY
     JUDGMENT

1    Accordingly, the Court GRANTS Defendant's motion for summary judgment.

2    **B.  Sanctions**

3    The Court further concludes that judgment in favor of Defendant is additionally

4    appropriate as a discovery sanction in light of Plaintiff's willful and bad faith violation of

5    Magistrate Judge Lloyd's discovery order.

6    The Court finds that Plaintiff's violation of the discovery order was willful and in bad

7    faith. "A party demonstrates bad faith by delaying or disrupting the litigation or hampering

8    enforcement of a court order." *Leon*, 464 F.3d at 961.  Not only did Plaintiff violate the discovery

9    order by refusing to permit Dr. Mason's deposition testimony to go forward, but Plaintiff did so

10   even after the parties called Magistrate Judge Lloyd on the record from Dr. Mason's deposition.

11   Magistrate Judge Lloyd informed the parties that Magistrate Judge Lloyd believed that Dr.

12   Mason's deposition testimony should go forward based on the discovery order, and further

13   informed Plaintiff that blocking Dr. Mason's deposition could be grounds to sanction Plaintiff.

14   Notwithstanding Magistrate Judge Lloyd's direct and explicit warning to Plaintiff that blocking

15   the deposition would be grounds for sanctions, Plaintiff's counsel persisted in objecting to Dr.

16   Mason's testimony such that Dr. Mason's deposition did not go forward.  These facts demonstrate

17   that Plaintiff willfully violated Magistrate Judge Lloyd's written discovery order, willfully failed

18   to heed Magistrate Judge Lloyd's urging in the phone call to permit the deposition to go forward,

19   and hampered enforcement of Magistrate Judge Lloyd's discovery order in bad faith.  Plaintiff's

20   willful and bad faith conduct is sufficiently egregious to support the sanction of dismissing

21   Plaintiff's claim.  *See Valley Engineers Inc. v. Elec. Engineering Co.*, 158 F.3d 1051, 1056 (9th

22   Cir. 1998) (holding that a single willful violation of a discovery order can justify dismissal as a

23   sanction).

24   In order to determine whether dismissal is an appropriate sanction, the Court must consider

25   the following five factors:

26       (1) the public's interest in expeditious resolution of litigation; (2) the
         court's need to manage its docket; (3) the risk of prejudice to the

27

13

United States District Court
Northern District of California

party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Anheuser-Busch*, 69 F.3d at 348.  The Ninth Circuit has held that where, as here, a party has violated a court order, the first two factors weigh in favor of case-dispositive sanctions and the fourth factor weighs against.  *Valley Engineers*, 158 F.3d at 1057.  Thus, the Court focuses its analysis on the third and fifth factors.

As to the third factor, the risk of prejudice to the party seeking sanctions, the Court must determine whether Plaintiff's actions impaired Defendant's "ability to go to trial or threatened to interfere with the rightful decision of the case."  *Leon*, 464 F.3d at 959.  In the instant case, Plaintiff's refusal to permit Defendant to depose Dr. Mason meant that Plaintiff denied Defendant access to the testimony of R.J.'s primary treating psychiatrist at St. Helena.  Dr. Mason's deposition was scheduled for July 15, 2016—only six days before the July 21, 2016 deadline for Defendant to file a motion for summary judgment.  Plaintiff's obstruction of Dr. Mason's testimony thus required Defendant to file a motion for summary judgment without the testimony of R.J.'s primary treating psychiatrist at St. Helena.  Additionally, without Dr. Mason's testimony, Defendant's ability to go to trial would be severely impaired, and Plaintiff's obstruction thus threatened to interfere with the rightful decision of the case.  Accordingly, the third factor weighs in favor of dismissing Plaintiff's case as a discovery sanction.

Turning to the fifth factor, the availability of less drastic sanctions, "the district court must consider less severe alternatives and discuss them if it elects to dismiss."  *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 604 (9th Cir. 1988).  In the instant case, a less drastic sanction for Plaintiff's refusal to permit Defendant to depose Dr. Mason could be a sanction of adverse evidentiary findings based upon information Defendant intended to obtain from Dr. Mason.  However, the Court notes that Magistrate Judge Lloyd warned Plaintiff over the phone that continued obstruction of Dr. Mason's deposition could result in an adverse inference sanction.  Plaintiff was undeterred by the possibility of an adverse inference sanction.  Therefore, the Court determines that the lesser sanction of adverse evidentiary findings would not be

14

United States District Court
Northern District of California

1   appropriate, and the fifth factor also weighs in favor of dismissing Plaintiff's case as a discovery

2   sanction.

3          Because four of the five factors for determining whether dismissal is an appropriate

4   sanction weigh in favor of dismissing Plaintiff's case, the Court GRANTS Defendant's motion to

5   dismiss Plaintiff's case as a discovery sanction for violating Magistrate Judge Lloyd's discovery

6   order.

7          Additionally, if a party fails to comply with a discovery order, the Court "must order the

8   disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

9   including attorney's fees, caused by the failure, unless the failure was substantially justified or

10  other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).  In the

11  instant case, the Court has found that Plaintiff's failure to abide by Magistrate Judge Lloyd's

12  discovery order was willful and in bad faith.  Plaintiff has made no showing that the failure was

13  substantially justified or that an award of expenses would be unjust.

14         Defendant's reasonable expenses, including attorney's fees, incurred in preparing for and

15  attending the deposition of Dr. Mason that Plaintiff did not allow to proceed total $6,113.60.  *See*

16  ECF No. 64 (Decl. of Aryn Harris); *Lias v. Cty. of Alameda Cal.*, No. C 05-00317 SI, 2006 WL

17  648354 (N.D. Cal. Mar. 9, 2006) (awarding attorney fees to county counsel).  Therefore, the

18  Court GRANTS Defendant's motion for monetary sanctions of $6,113.60.

19  **IV.     CONCLUSION**

20         For the foregoing reasons, the Court GRANTS Defendant's motion for summary

21  judgment, GRANTS Defendant's motion for terminating sanctions, and GRANTS Defendant's

22  motion for monetary sanctions of $6,113.60.

23  **IT IS SO ORDERED.**

24

25  Dated: August 18, 2016

26

27

28
15
Case No. 15-CV-01526-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

Case No. 15-CV-01526-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California